## THE F. I. MERRYMAN.[1]

### (*District Court, E. D. New York.* April 5, 1886.)

SALVAGE—VESSEL WITHOUT NAVIGATOR AND VESSEL SINKING—SALVOR SAVING HIS LIFE IN ACT OF SALVING—AWARD.

The bark S., being in a sinking condition, and without boats, met the brigantine M., which had on board her crew alone, the master and mates having died, leaving no one capable of navigating her. The master of the S. thereupon abandoned his vessel, and, with all his crew, went on board the M., and brought her safely to port without further difficulty. Libels were thereafter filed for salvage against the M. by the master and crew of the S. The value of the M. and her cargo was $50,000. *Held,* that the service rendered to the M. by the master of the S. was a salvage service, and the fact that in rendering it he was probably saving his own life did not defeat his claim; $1,000 was therefore awarded him. But as the M. was in need of a navigator only, the services rendered by the crew of the S. were not salvage services, and they could not recover.

In Admiralty.

*Jas. K. Hill, Wing & Shoudy,* for libelants.

*John E. Parsons,* for claimants.

BENEDICT, J. This is an action by the master and crew of the German bark Friederich Scalla, to recover salvage from the brigantine F. I. Merryman, her cargo and freight. The facts are not in dispute. On August 20, 1885, the brigantine Merryman sailed from Bathurst, on the Gambier river, with a cargo of hides, for Boston, Massachusetts, under the command of Capt. Nickerson. She had no mate, her mate having died in July. Her crew consisted of the master, two seamen, an African shipped in Bathurst, and the cook and steward, a colored man. On the day after sailing the master was taken sick, and died on the first of September. On the same day the master died the second mate was taken sick, and on the eleventh day of September he died. Before dying the captain told the cook and steward, in case the second mate should be sick, to take command of the vessel, and steer between N. W. and N. W. by N., and he would probably hit some port in America. When the captain died, the cook and steward, whose name was William Henry Furbert, took command. He was no navigator, nor was there any person on board able to take

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

an observation. The bark was steered as the captain had directed, and on the twenty-first day of September the sails of a bark were discovered ahead, which proved to be the German bark Friederich Scalla. As the vessels neared each other an ensign was hoisted on the Merryman, and about the same time it was discovered that the Scalla had also a signal flying. When within hailing distance the Merryman reported herself as 32 days from Bathurst, and in want of a navigator. The Scalla reported herself as 50 days from Stettin, and without boats. A boat was sent to her from the Merryman, when it was ascertained that the Scalla had been disabled on the ninth of September, and was at the time in a sinking condition; that she had lost all her boats, and the master had been desirous of abandoning her for several days. Thereupon the master, the mate, and 10 men, comprising the crew of the Scalla, left their own vessel, and went on board the Merryman, taking with them, in five trips of the boat, their clothes, nautical instruments, and some provisions. The master of the Scalla then took command of the Merryman, altered her course, and proceeded towards Boston. When off New York, being somewhat short of water, it was thought best to go to New York instead of Boston, and on the seventh day of October she arrived in New York, having met with no disaster or bad weather, and the vessel and her cargo being in good condition. From the time the master of the Scalla took charge of the Merryman, most of the ship's work was performed by the mate and sailors of the Scalla. Two of the crew of the Merryman were able to work, and took turns at the wheel. The cook and steward did little or nothing, being worn out.

Out of this state of facts has arisen this claim of the master, mate, and seamen of the Scalla to be paid a salvage compensation for their services on board the Merryman.

It cannot be doubted that a salvage service was rendered to the Merryman by the master of the Scalla. The Merryman was in distress for want of a navigator; he supplied that want. His presence on board changed the condition of the Merryman from a situation of considerable peril to one of comparative safety. By means of his knowledge and skill the Merryman reached port, and without loss to her owners. I can see no ground on which to deny him a salvage reward for the services he rendered. It is true that saving his own life was one, and perhaps the principal, motive which induced him to leave his own sinking vessel and join the Merryman; but it has several times been held that the existence of such a motive affords no ground for refusing salvage reward. *The Two Friends*, 2 W. Rob. 349; *The Merrimac*, 1 Ben. 201.

The contention on behalf of the claimants is that instead of furnishing a navigator to the Merryman, the entire crew of the Scalla, for the purpose of saving their own lives, went on board the Merryman, and no individual was separately designated to render service. By their own arrangement they constituted a unit. Treated as

such, the service rendered by the Merryman to all was more than the equivalent for the services rendered to the Merryman. But surely the master of the Scalla was, by the attendant circumstances, designated to render to the Merryman precisely the services she needed, namely, those of navigator and master. These services he did render, and in so doing he assumed responsibilities if not more serious than those from which he escaped, certainly different, but which he was under no obligation to assume. It seems to me to be no answer to his claim for compensation for this service to say that the services rendered to the Merryman by others who went on board the Merryman were more than compensated by the saving of their lives by means of the Merryman.

Besides, the question is never a mere question of equivalent for services rendered. When a salvage service is shown in a court of admiralty, it is the duty of that court to see that more than an equivalent is given for the services, and this upon grounds of public policy. The rendition of a salvage service to the Merryman by the master of the Scalla entitles him, therefore, to ask of this court a salvage compensation, whatever may have been the benefit received from the Merryman by others of the crew of the Scalla. He was nine days in command of the Merryman. He met with no storm or unusual circumstances. To say the least, his anxieties were diminished, rather than increased, by taking charge of the Merryman. The value of the Merryman and her cargo was some $50,000. I think the master should be paid a thousand dollars as his reward.

In regard to the other persons, 11 in number, who went from the Scalla to the Merryman, and who, under the direction of the master of the Scalla, navigated the Merryman to New York, the case is different in this: that while they rendered useful services, and relieved a small crew, no doubt much worn by labor and anxiety, their services in no way differed from the services they would have performed on board their own vessel; certainly they were no more important or arduous in character. These services were not necessary to the Merryman, for her crew, with the aid of a navigator, would have brought her in safely. Nor were these services requested. The services of a navigator were required, and only the services of a navigator were asked of the Scalla. The services of the others were rendered voluntarily, because, not daring to remain on their own vessel, they obtained permission to come to the Merryman. These services were not those of salvors. They were not necessary to the salving of the bark. They were not requested by the bark's crew, who remained in possession of their vessel. They were accepted because voluntarily tendered, and they must be deemed to have been rendered as an equivalent for the benefit they received

There must therefore be a decree in favor of the libelant Augustus Hoffschild for the sum of $1,000, and the costs of this action. As regards the other libelants, the libel is dismissed, without costs.